E-FILED
Tuesday, 15 December, 2009  04:44:34 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| FLAGSTAR BANK, FSB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:08-cv-01278 |
| vs. | ) Judge Michael M. Mihm |
| | ) Magistrate Judge Gorman |
| FREESTAR BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS FEES AND COSTS

Defendant FREESTAR Bank, N.A., respectfully submits this Memorandum of Law in Support of its Motion for Attorneys Fees.

### Brief Statement and Supporting Authorities

Under the federal trademark act and Seventh Circuit authority, a prevailing defendant in a trademark infringement case may pursue recovery of its attorneys fees expended in defending against the trademark claim. The trademark act describes these cases as "exceptional," not in the sense that fees are unheard of, but in the sense that they are not automatic. The standard is oppressiveness: did the plaintiff's infringement claim lack merit, or have elements of an abuse of process, or did Plaintiff's conduct unreasonably escalate the cost of the defense? If the answer to any of these questions is yes, then an award of attorneys' fees is the only counterweight that could possibly compensate the prevailing defendant.

Here, Plaintiff's case was oppressive on all fronts. Plaintiff had no business filing a complaint in Illinois (a state that Plaintiff does not even operate a banking center in) when it had no idea if, or even how, it marketed or advertised in the state. Nor, during discovery, did it even inquire. Discovery was pure teeth-pulling, which it is not supposed to be: instead of answering

simple questions posed by Defendant, Plaintiff forced Defendant to go to court to compel action (and return to court once Plaintiff still chose a path of gamesmanship). The result was unnecessarily expensive litigation to get to the bottom of Plaintiff's case. Getting to the bottom was neither quick nor cheap; worse, there was nothing there. In an oppressive case like this one, Defendant's fees should be Plaintiff's to bear.

**Case History**

Plaintiff first started litigating against Defendant's mark in June 2007, when Plaintiff opposed the mark's registration with the United States Patent and Trademark Office (thereby commencing litigation at the Trademark Trial and Appeal Board). After discovery was completed in that case, Plaintiff pressed the reset button and asked the Board to suspend the administrative proceeding so that it could file a federal trademark infringement case against Defendant. Defendant opposed the suspension and filed for summary judgment, but the Board deferred to its longstanding practice of suspension when faced with a party pursuing a federal case.

In January 2008, Plaintiff filed its federal case in the United States District Court for the Eastern District of Michigan, but the case never got off the ground. Defendant, a small community bank in Central Illinois, has no meaningful ties to the state of Michigan, and so asked the district court to dismiss the case on the ground that it lacked personal jurisdiction over Defendant. The Court agreed and dismissed the case. Plaintiff then pressed the reset button once more and re-filed the same case in this Court in October 2008. On November 13, 2009, this Court issued an Order granting Defendant's Motion for Summary Judgment and also granting Defendant's Motion to Strike Plaintiff's expert from the case. Ex. 1. The Court entered judgment in favor of Defendant on November 16, 2009.

## The Rule of Law in Awarding Fees to Prevailing Defendants
## in Trademark Infringement Cases

The federal trademark (Lanham) act authorizes an award of attorneys' fees to the prevailing party "in exceptional cases," 15 U.S.C. § 1117(a), which the Seventh Circuit interprets as cases that are "oppressive because of lack of merit and cost of defending." *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 126 F.3d 1028, 1032 (7th Cir. 1997). A case brought in good faith can still be oppressive or "exceptional" and warrant the award of attorneys' fees to the defendant. *Id.* A suit is oppressive "if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *S Indus., Inc. v. Centra 2000*, 249 F.3d 625, 627 (7th Cir. 2001). A defendant need not prove a claim lacked merit *and* abuse of process or unreasonableness on the part of the plaintiff. One of these is sufficient. *Id.* ("*Based solely on the weakness of S Industries' claims*, [the judge] acted well within his discretion in granting attorneys fees.") (emphasis added).

## Fair Estimate of Defendant's Fees

Consistent with Federal Rule of Civil Procedure 54(d)(2)(B)(iii), Defendant must "state the [fee] amount sought or provide a fair estimate of it." Defendant has estimated its fees in this matter to be $300,000, involving over 1,100 hours of legal work billed at $266 per hour. The amount is reasonable given the reach of the case and this reality: Plaintiff's evidence was hard to find, and turned out to be non-existent. Defendant was also required to litigate the case in three federal courts: the Central District of Illinois (where Plaintiff filed its trademark infringement suit), the Northern District of Illinois, and the District of New Hampshire. Plaintiff issued subpoenas duces tecum in the names of the Northern District of Illinois and District of New Hampshire, and Defendant filed motions to quash in those courts on the basis that the subpoenas sought privileged documents. Defendant seeks its fees related to litigation in the other federal

courts because the subpoenas were only issued in connection with the underlying trademark matter. In order to avoid any suggestion of duplication, Defendant is not seeking recovery of its local counsel fees.

As explained below, the litigation in this Court was expensive for several reasons: (1) Defendant had to ask this Court to compel action (answers to simple discovery questions) on multiple occasions; (2) Defendant spent a significant amount of time trying to understand, and then successfully challenge, the basis for Plaintiff's expert's opinions in this case; (3) Defendant pursued summary judgment, which is a substantial filing. In addition, Defendant responded to major motions filed by Plaintiff, including a motion for summary judgment (denied), a motion to strike Defendant's expert (held to be moot), two motions for protective orders (both denied in part), and a motion to compel (held to be moot). Taking and defending ten depositions (including two experts) added considerably to Defendant's fees.

Defendant filed no counterclaims in this case, and litigated the case with a single attorney, Robert Kearney. Mr. Kearney has testified by affidavit that he has 15 years of experience practicing law, graduated from Notre Dame Law School (and holds a Masters of Business Administration), was Executive Editor of the *Notre Dame Law Review*, was a law clerk for two years at the United States Court of Appeals for the Seventh Circuit, and is a tenured professor at Illinois Wesleyan University, where he teaches Business Law and where he is also the Chair of the Department of Business Administration. Ex. 2. Mr. Kearney's rate ($266 per hour) and the total fees incurred in this case (especially in light of the case's litigation history) are in line with "industry averages" among intellectual property lawyers.[1]

---

[1] According to the 2009 Report of the Economic Survey published by the American Intellectual Property Law Association, the average per-hour solo practitioner billing rate in this field is $269 and the average cost (including fees) of litigating a trademark case with less than $1 million "at

Under Federal Rule of Civil Procedure 54(d)(C), "[t]he court may decide issues of liability for fees before receiving submissions on the value of services." Accordingly, Defendant respectfully asks that the Court give it an opportunity to submit detailed billing records of its attorney's work if the Court agrees with Defendant that fees are appropriate in this case. With the proper redaction of privileged matter, those records will further establish both the high price that Defendant paid to defend its name and the appropriateness of its attorney's fees.

---

risk" is $384,000, including appeals. Based on Plaintiff's pursuit of its own attorneys fees, it is easy to see how this case put more than $1 million "at risk" from Defendant's perspective. According to the 2009 Survey, the average cost (including fees) of litigating a case in that circumstance is $857,000, including appeals. The average cost just to get through discovery in such a case is $503,000, which would not include pre-trial dispositive motion work. The last number is higher for large firms ($680,000 for firms with at least 76 lawyers) and lower for small firms ($310,000 for firms with fewer than 6 lawyers). Against these benchmarks, it is reasonable for Defendant to seek recovery of $300,000 for fees incurred during discovery *and* the dispositive motion stage (*and* litigation in two other federal courts).



An Expensive Case That Ends As "Extremely One-Sided"

**Four Federal Courts**: Plaintiff suspends administrative case after full discovery, files suit in Eastern District of Michigan (dismissed), then re-files suit in this Court, then issues subpoenas in names of two other federal courts

**Discovery Alleys**: Plaintiff leads Defendant down a "blind discovery alley" by refusing to answer simple question concerning survey evidence

**Three Court Orders**: Defendant must file two motions to compel just to get "simple" answers to survey evidence question; a third Court order settles the matter

**Expensive Litigation**: Defendant must take or defend 10 depositions in multiple jurisdictions, including 2 experts, and answer multiple rounds of written discovery

**Major Motion Work**: Plaintiff files motions for multiple protective orders (denied), an expert report (stricken), a motion to strike (moot), and a motion for summary judgment (denied). Defendant must respond to each.

**Argument**

I. **Plaintiff's Stunningly Weak Case of Infringement Justifies, Without More, an Award of Fees**

A trademark does not unlawfully infringe unless it is likely to cause confusion in the marketplace, which, as this Court's Summary Judgment Order indicates, requires a court to balance seven factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *Autozone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). A court may apply varying weight to each of these factors depending on the case; that said, three of the factors are of particular importance: the similarity of the marks, the defendant's intent, and actual confusion. *Barbecue Marx, Inc. v. Ogden, Inc.,*, 235 F.3d 1041, 1044 (7th Cir. 2000).

On these three most important factors, Plaintiff went 0-3. The Court found that the marks were not similar enough to create a likelihood of confusion, and the "record contains no evidence

of actual confusion or Freestar's intent to palm off its product as being associated with Flagstar's." Order at 28 (Ex. 2). In fact, the Court found that only *one* of the seven factors favored Plaintiff: the parties offer similar services (both are banks). The Court highlighted the utter absence of Plaintiff's banking centers in Illinois and weighed this factor (concurrent use) heavily: "An Illinois consumer seeking to open a bank account would need to drive across state lines before encountering a Flagstar banking center."

So where was the evidence of infringement? Nowhere:

- Not in the "metaphorical associations" made by Plaintiff's expert, who was struck from the case by the Court after concluding that the expert had "not presented any proposal, theory, or technique justifying his conclusion that customers are likely to confuse the parties' marks," *id.* at 6;

- Not in the marks themselves: "When considered holistically and as used in the marketplace, reasonable minds can reach only one conclusion: that these marks are indicative of completely separate, but possibly competing, entities." *id.* at 19;

- Not in any overlap either by way of geography or marketing channels: "The record is devoid of evidence of any link between the two businesses beyond the hypothetical possibility that Flagstar may open a branch somewhere in the state of Illinois one day." *id.* at 21-22;

- Not in evidence that banking customers are careless: "Flagstar has offered no evidence justifying its assertion that banking customers are likely to be confused because they generally lack sophistication." *id.* at 24;

- Not in any evidence that Plaintiff's mark is strong: "reasonable minds could not consider a $12.5 million advertising expenditure for 2008 to be evidence of a

8

strong mark when Flagstar has presented no evidence that a single dollar of that amount was directed toward Illinois." *id.* at 28;

Factors that (nearly) uniformly favor one party make an extremely weak case of infringement. Indeed, the Court noted that the record was "still extremely one-sided" even if reasonable minds could disagree over the confusion resulting from the marks' similarities. *Id.* at 27. Plaintiff's case was not thin; it was simply non-existent: "no-evidence" on the intent factor; "complete absence of evidence" of actual confusion; a "devoid of evidence" on the concurrent use factor; "no evidence" that customers lack sophistication; no evidence "beyond speculation" on the strength factor, and so on. As the Court noted, it can hardly be said that the evidence was beyond Plaintiff's reach: "Obtaining even a small piece of evidence regarding advertising in Illinois would have been simple, yet Flagstar filed for summary judgment before placing a single call to one of its five Illinois home loan centers in order to find out if and when it has used Flagstar materials in advertising." *Id.* at 26.

Defendant had to pay its way through this wasteland. In cases involving similar oppressiveness, courts have not hesitated to award the defendant its fees. In *Central Manufacturing, Inc. v. Brett*, 492 F.3d 876 (7th Cir. 2007), the Court of Appeals upheld an attorney fee award against a trademark registrant who claimed a baseball bat manufacturer was marketing its bats under a name that had already been spoken for. Only one problem: the registrant "filed an infringement lawsuit without evidence of any sales of baseballs or baseball bats to support its claim to rights" in the name. 492 F.3d at 884. At least the plaintiff could point to the manufacturer's name as identical to its own. Compare that case to Plaintiff's lawsuit here: it sued a bank in another state that was using a *different* name, without any evidence of actual confusion, likely confusion, simulated confusion (in the form of surveys or interviews),

indeed, *in the face of evidence* that it had no banking presence in Illinois and no intent or plan to set up shop in Illinois.

Defending against meritless claims is oppressive and alone can be grounds for an award of fees. That was the conclusion of the Court of Appeals in *S Industries v. Centra 2000*, where the plaintiff had sued a computer software producer for using a product name purportedly too close to the plaintiff's. But it, too, was a no-evidence case: during discovery, plaintiff produced no proof that it advertised computer products under the name supposedly infringed upon, or that it even produced related products under that name. "So there was never a threat that consumers would have confused" defendant's products with the plaintiff's. 249 F.3d at 627. In litigation terms, Flagstar and the plaintiff in *S Industries* are close cousins. In this case, Flagstar could not establish that it used or advertised its mark *in any of the places* a consumer would find Defendant: "Flagstar has presented no evidence confirming that these two marks are used in the same *state*, let alone county, city, neighborhood or street." Order at 27. Without any product overlap, this Court found no threat of consumer confusion: "[c]onsumers cannot become confused by a mark they will never encounter in the marketplace." *Id.*

As this Court undoubtedly is aware, trademark infringement cases are expensive. They often involve consumer surveys, which are "routine" in these cases. *Evory v. RJM Acquisitions Funding, LLC,* 505 F.3d 769, 776 (7th Cir. 2007). As discussed below, Defendant spent a great deal of time and money just getting Plaintiff to disclose whether it ever *had* such a survey (it's still unclear). Experts are also common; in this case, Defendant spent a great deal of time and money exploring Plaintiff's expert's methodology and opinion, and then successfully challenging it. In retrospect, the bulk of Plaintiff's case was equal parts an expert's testimony (struck from the case) and pure speculation (a cascade of *somedays*: that it may someday enter

Illinois, or someday open a bank in the state). That is not evidence, but it is expensive to expose, making it oppressive and exceptional.

> II.   **By Forcing Defendant to File Multiple Motions to Compel Simple Answers to Simple Questions, Plaintiff Abused the Court's Processes**

When a plaintiff refuses to disclose its evidence during discovery, forcing a defendant to go to court to compel action, it amounts to an abuse of the court's processes. *Central Manu., Inc.*, 492 F.3d at 884. That is what happened here, and, again, it justifies an award of fees. Because consumer surveys can be a proxy for a likelihood of confusion in these cases, and because they are routinely employed by plaintiffs, Defendant asked Plaintiff the following relevant (and critical) question: *Has Plaintiff conducted any customer surveys related to or in support of this litigation, or concerning Defendant's mark, and, if so, when?*

After Plaintiff refused to answer the question on the basis of privilege (but did not list any survey in a privilege log), Defendant implored Plaintiff to give a complete answer: were there surveys in existence or not? Plaintiff supplemented its response this way: "Any consumer survey to be relied on by plaintiff will be timely produced in discovery."

Again, in letter form, Defendant explained why this answer was deficient and completely non-responsive. But Plaintiff refused to budge. In fact, one of Plaintiff's supplemental responses appeared to express concern that Defendant was pursuing a Rule 11 motion. Defendant just wanted a simple answer to the question (and to a related request to admit): were there consumer surveys? Without any idea whether Plaintiff had a survey or not, Defendant turned to this Court to compel action. The Court determined that the survey question was "entirely proper and should have been more plainly answered by Plaintiff." Doc. 22 at 4 (Ex. 3). The Court explained: "If surveys have not been conducted, then the answer is . . . 'admitted.' If

they have, the response is 'denied.' The same simple answers should be made to the Interrogatory." *Id.*

Still Plaintiff refused to say. Plaintiff supplemented its answer not with a simple statement but by specifically incorporating five pages of "General Objections" into its answer. The list of generalized objections was dizzyingly complex and amounted to a giant disclaimer of anything that followed. Again, Plaintiff raised a privilege objection but produced no privilege log containing or even referencing surveys. In short, Plaintiff's answer was not simple, and not responsive. In an Order following Defendant's *second* motion to compel on the subject, the Court ruled that Plaintiff's "5 pages of general boilerplate objections are entirely disregarded, as improperly made under the Rules." Doc. 29 at 2 (Ex. 4).

It was not any easier getting Plaintiff to admit that it had not conducted any surveys at the time it filed its complaint in this case. Again, only after asking the court to compel action did Plaintiff admit that it had no survey evidence when it sued (and now we know it had no other evidence of infringement, either). In fact, it took *three Court orders* to get a simple answer to the survey questions. As the Court noted in its third Order (following Plaintiff's motion for reconsideration), "Plaintiff's convoluted approach to responding to this Request did not help, first declining to answer the Request, then denying it, and finally admitting the Request. Each supplemental response was preceded by reiteration of all previously-made objections (including five pages of boilerplate objections) and all previously tendered Response." Doc. 33 at 1 (Ex. 5).

Three Court orders are three too many. The purpose of Requests for Admission and Interrogatories is to narrow the issues in dispute and discover a party's proof. In its third Order, the Court indicated that "[b]oth earlier orders made it clear that Defendant was entitled to a clear and simple answer to this Request to Admit. Given the myriad of objections stated (all of which

have been denied as without merit) and given the confusing answers shown above, it can hardly be said that this matter is settled." Doc. 33 at 2. So the Court settled it:

> Accordingly, the Court's prior Order (doc. # 29) is amended as follows: The Court finds that the [Plaintiff's] Second Supplemental Answer is the ONLY extant answer to Request to Admit # 4. Plaintiff has ADMITTED without valid objection that, as of the date the complaint was filed in this case, it had not conducted any surveys of consumers concerning and comparing Defendant's Mark and Plaintiff's Mark or concerning and comparing the names FLAGSTAR BANK and FREESTAR BANK. This is now an admitted fact in this case and cannot be contradicted by Plaintiff for any reason.

Doc. 33 at 2 (Ex. 5).

Now it is known: Plaintiff was not concealing evidence in refusing to answer simple questions about surveys. It was hiding the fact that it *had no evidence*. Hiding a lack of evidence should be no more excusable than hiding evidence itself. Even more troubling, and more abusive of the court's processes, are the answers that Plaintiff gave on the subject. By "first declining to answer" the request for admission about surveys, then "denying it," then "finally admitting the Request," Plaintiff did more than simply evade. It signed at least one pleading which was simply false, and which caused Defendant to expend considerable resources chasing a shadow. From the beginning, Plaintiff plainly set out to put forth the illusion of a case. That turns discovery into a series of trips down dead end streets, which is a dispiriting experience for everyone with no choice but to go along for the ride.

*Central Manufacturing* is again instructive. There, the Court of Appeals upheld the award of attorneys fees against the trademark plaintiff on the grounds that the case lacked merit,

had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of the defense. The Court held:

> [Plaintiff's] actions qualify [for fees] on all counts! It filed an infringement lawsuit without evidence of any sales of baseballs or baseball bats to support its claim to rights in the . . . . mark. . . . It ignored requests to produce documents to support its claim, forcing the defendant's lawyers to go to court to compel action. [Plaintiff's president] offered confused, misleading deposition testimony with unfulfilled promises of cooperation. And the documents eventually produced effectively made a mockery of the entire proceeding. We have no trouble upholding the award of fees and costs.

492 F.3d at 884.

Here, Plaintiff had the same play book: it filed its case without evidence, ignored and evaded discovery requests, forced defendant to go to court repeatedly for simple answers, signed convoluted discovery answers, and then finally, on the important issue of surveys, after denying their non-existence, admitted that they never existed in the first place. There is no daylight between the plaintiff in *Central Manufacturing* and the Plaintiff's conduct in this case, and the reasons that led the district court to assess fees (and the court of appeals to affirm them) in that case should lead to the same result here.

### III.     Plaintiff's Conduct Unreasonably Increased the Costs of Defending Against Its Infringement Suit

Plaintiff's conduct during the discovery phase was unreasonable. It was also expensive. When a party adds to the expense of a no-evidence case through its own conduct, fees are especially appropriate. *S Indus.*, 249 F.3d at 628 ("Not only did [Plaintiff] forward indefensible claims, but it added to the cost and aggravation of this meritless litigation by not responding to discovery requests, repeatedly failing to properly serve or sign motions filed with the court, and failing to satisfy the requirements of the local rules of the district court.").

The prime example of Plaintiff's cost escalation comes from a letter written by its counsel in response to Defendant's multiple attempts to extract simple answers on the issue of

survey evidence. Defendant implored Plaintiff that without simple answers, it would have no choice but to ask the Court to compel action. Plaintiff's response:

> The existence and status of any consumer surveys conducted, or to be conducted, *vel non*, are presently matters of attorney work-product, and not discoverable under Fed. R. Civ. P. 26(b)(3)(A) . . . . Your self-decision that the supplemental responses to Admission Request Nos. 4 and 5 are an admission that Flagstar Bank has conducted consumer surveys, is unwarranted based on those supplemental responses. Your Admission Request Nos. 4 and 5 are improper for all of the reasons stated in the objections to those requests. That the supplemental response to both of those improper requests concludes by stating: *"To the extent a response is required, the matter is denied,"* is a mere safeguard to prevent you from force-fitting admissions on to improper admission requests. If you choose to file a discovery motion, it should be to test the propriety of your admission requests and Flagstar's objections. **Your self-assumption of certain facts will otherwise lead down a blind discovery alley.**

Ex. 6 (bold emphasis added).

Plaintiff was right about one thing: it was a blind discovery alley made unnavigable by the kinds of impenetrable explanations and answers that Plaintiff displayed in its letter. It was a game, apparently, and three court orders later, Defendant was finally out of the alley. Along the way, Plaintiff asserted privilege with respect to the existence of survey evidence (but produced no privilege log listing surveys), denied that it had conducted surveys, denied it ever said it had not conducted them, and also refused to say that it did conduct surveys. Its original denial was a "mere safeguard" against discovery requests that Plaintiff labeled as "improper" in its letter but that this Court held were "entirely proper and should have been more plainly answered by Plaintiff." Doc. 22 at 4 (Ex. 3). Even after that Order was issued, it took *two more* Court Orders before the Court concluded that the "[g]iven the myriad of objections stated (all of which have been denied as without merit) and given the confusing answers shown above, it can hardly be said that this matter is settled." Doc. 33 at 2 (Ex. 5).

What *is* settled is that Plaintiff's discovery answers are simply indefensible. Even if Plaintiff originally brought its suit in good faith (still, one wonders, given the great void of *any*

*evidence* in its favor), its conduct during the litigation was oppressive and exceptional. *Door Systems, Inc.*, 126 F.3d at 1032 ("Yet it is not difficult to imagine how a suit brought in good faith and lost could be thought so 'exceptional' as to warrant the award of attorneys' fees to the defendant."). When Plaintiff's oppressive discovery practices are considered in light of the clear purpose of the practices (to hide the fact that a case that looks weak is, in fact, weaker than it looks), a frustrated party like defendant has made the case for its fees.

### IV.     The Court Should Award Defendant Its Full Costs

In its Summary Judgment Order, the Court awarded Defendant its costs. Defendant has filed its Bill of Costs in addition to this Motion. In order to avoid even further unnecessary litigation, Defendant has conformed (and confined) its cost request to this Court's decision in *Mason v. Smithkline Beacham Corp.*, 2008 WL 5397579 (C.D. Ill. Oct. 7, 2008) (Mihm, J.).

### Conclusion

Fees are appropriate in "the category of oppressive suits, fairly described as exceptional, in which the case for an award of fees to the defendant is compelling." *Door Systems*, 126 F.3d at 1032. What should be compelling here is that Plaintiff set out to prosecute a federal trademark infringement case without any evidence to speak of, refused to show its cards (or lack of cards in the case of survey evidence) even in the face of court orders to do so, and knew all along that it was leading Defendant on a trip down a "blind discovery alley." Plaintiff should pay for this trip.

        Respectfully submitted,

        FREESTAR BANK, N.A.
        Defendant

        by,

        s/ Robert A. Kearney

        Robert A. Kearney, No. 6225305
        ATTORNEY FOR FREESTAR BANK
        LAW OFFICE OF ROBERT KEARNEY
        514 S. Moore Street
        Bloomington, IL 61701
        Telephone: (309) 664-7572
        Fax: (309) 662-5091
        Email: rkearney@kearneyslaw.com

Dated: December 15, 2009

## DEFENDANT FREESTAR BANK'S NOTICE OF FILING
## AND CERTIFICATE OF SERVICE

Now comes Defendant, FREESTAR Bank, N.A., by and through its attorneys, and gives Plaintiff notice that on December 15, 2009, Robert A. Kearney caused the foregoing **Defendant's Memorandum of Law in Support of Motion for Attorneys Fees and Costs** to be filed electronically with the Clerk of the Court in this case using the ECF System, which will send notification to the following registered participants of the System: Jordan Fifield, Fadi Rustom, Robert Tuttle, Kevin Heinl, and Chanille Carswell.

        Respectfully submitted,

        s/ Robert A. Kearney
        Robert A. Kearney, No. 6225305
        ATTORNEY FOR FREESTAR BANK
        LAW OFFICE OF ROBERT KEARNEY
        514 S. Moore Street
        Bloomington, IL 61701
        Telephone: (309) 664-7572
        Fax: (309) 662-5091
        Email: rkearney@kearneyslaw.com

Dated: December 15, 2009